

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----ooOoo----

CHARLES BAIRD, ALLEN L.
APPELL, AND EDWARD J. ERLER,

        Plaintiffs,

    v.

CALIFORNIA FACULTY
ASSOCIATION, KATHLEEN CONNELL,
CONTROLLER OF THE STATE OF
CALIFORNIA, IN HER OFFICIAL
CAPACITY, and CALIFORNIA
PUBLIC EMPLOYMENT RELATIONS
BOARD,

        Defendants.

NO. CIV. S-00-0999 WBS DAD

<u>MEMORANDUM AND ORDER</u>

----ooOoo----

        Plaintiffs Charles Baird, Allen L. Appell, and Edward J. Erler are professors employed by California State University ("CSU") organized in a bargaining unit exclusively represented for collective bargaining by defendant California Faculty Association ("CFA" or "the union"). Plaintiffs claim that they are not members of CFA. Plaintiffs have filed a class action complaint alleging that recently enacted Senate Bill 645 ("SB 645"), which allows CFA to collect the portion of the union dues from non-union members' paychecks, is unconstitutional.

26

1    Plaintiffs move for class certification pursuant to
2  Federal Rule of Civil Procedure 23.   See Fed. R. Civ. P. 23.
3  Defendant CFA opposes the motion.   Defendant Kathleen Connell
4  (State Controller) joins in CFA's opposition.   Defendant Public
5  Employment Relations Board has submitted a statement that it
6  "neither supports nor opposes Plaintiffs' motion for class
7  certification."

8  I.   Factual and Procedural Background

9    On October 10, 1999, Governor Davis signed SB 645,
10  which became effective January 1, 2000 adding sections 3583.5 and
11  3584 to the California Government Code and amending several other
12  sections.   Section 3583.5 states in part:

13    any employee of the California State University or the
      University of California ... who is in a unit for which
14    an exclusive representative has been selected pursuant
      to this chapter, shall be required, as a condition of
15    continued employment, either to join the recognized
      employee organization or to pay the organization a fair
16    share service fee.

17  Cal. Gov't. Code § 3583.5(a)(1).   Additionally, the section
18  states:

19    [t]he costs covered by the fee under this section may
      include, but shall not necessarily be limited to, the
20    cost of lobbying activities designed to foster
      collective bargaining negotiations and contract
21    administration, or to secure for the represented
      employees advantages in wages, hours, and other
22    conditions of employment in addition to those secured
      through meeting and conferring with the higher
23    education employer.

24  Cal. Gov't. Code § 3583.5(a)(2).   Further, section 3583.5 allows
25  for a recission vote by a majority of all employees.   This vote
26  must be paid for by the petitioning party.   See Cal. Gov't. Code
27  § 3583.5(c)(1), (c)(4).
28  ///

1    Section 3584 provides an exception to payment of the

2  fair share fee by members "of a bona fide religion, body, or sect

3  that has historically held conscientious objections to joining or

4  financially supporting public employee organizations ...." Cal.

5  Gov't. Code § 3584(a). In lieu of dues, the employee pays sums

6  "equal to the amount of the fair share service fee ... to a

7  nonreligious, nonlabor charitable fund...." Cal. Gov't. Code §

8  3584(a).

9    CFA sent a Notice to All Nonmember Agency Fee Payers

10  for the Fee Period January 1 through December 31, 2000. This

11  notice explained how the fee was calculated, the types of

12  activities that were included and excluded from the fee

13  calculation, financial data in support of the fee calculation,

14  and the steps that the nonmember and CFA would follow if the

15  nonmember challenges the accuracy of the calculation of the

16  agency fee.[1] Further, the notice detailed the procedure for

17  asserting a religious objection. A nonmember asserting such an

18  objection is required to contribute the equivalent of their

19  agency fee to a charity from a list agreed to by CFA and CSU

20  Administration.

21    On November 18, 1999, plaintiff Appell, a professor at

22  CSU-San Francisco, wrote to CFA asserting a religious objection

23

24    [1]   Although non-union members may be compelled to pay a
    share of the cost of collective bargaining, they cannot be
25  compelled to contribute money that will be used to finance
    ideological causes because this would violate the nonmembers'
26  First Amendment rights. See Abood v. Detroit Bd. of Educ., 431
    U.S. 209 (1977). In Chicago Teachers Union v. Hudson, 475 U.S.
27  292 (1986), the Supreme Court articulated requirements for the
    union's collection of agency fees, including notice to the non-
28  union members explaining the fee. See id. at 309-310.

3

1  to the fees.   On February 3, 2000, plaintiff Baird, a professor
2  at CSU-Hayward, wrote to the CFA challenging the calculation of
3  chargeable and nonchargeable expenses and asserting a religious
4  objection to paying the agency fees.

5          Plaintiffs argue that SB 645 is unconstitutional.   They
6  state four counts pursuant to 42 U.S.C. § 1983: (1) the statute
7  violates their equal protection rights under the Fourteenth
8  Amendment by taking fees from employees "without any opportunity
9  to persuade CFA or their employers not to negotiate for the fee
10 requirement or to themselves vote on the requirement"; (2) the
11 statute violates the First Amendment by authorizing public
12 employee labor unions to include non-chargeable lobbying
13 expenditures; (3) the statute violates the First Amendment and
14 the Equal Protection Clause by authorizing the State to charge
15 plaintiffs for exercising their right to rescind the "fair share
16 fee" requirement; and (4) the statute infringes on the freedom of
17 association protected by the First Amendment by imposing the fee
18 requirement on all individuals who are not members of certain
19 approved religions, bodies, or sects.

20         Plaintiffs ask for declaratory and injunctive relief in
21 addition to nominal damages, compensatory damages, and equitable
22 relief in the amount of "fair share fees" taken from them.

23 II.   Class Certification

24         Plaintiffs move to certify the following class: "all
25 individuals who are or were, at any time since October 10, 1999,
26 non-union 'higher education employees' in a bargaining unit
27 represented by CFA."   To be maintained as a class, the action
28 must meet the four prerequisites under Federal Rule of Civil

4

1  Procedure 23(a) in addition to meeting the requirements of at

2  least one of the three subdivisions of Federal Rule of Civil

3  Procedure 23(b).  <u>See</u> Fed. R. Civ. P. 23(a),(b).

4         A district court must conduct a rigorous inquiry before

5  certifying a class.  <u>See</u> <u>General Telephone Co. v. Falcon</u>, 457

6  U.S. 147, 161 (1982); <u>East Texas Motor Freight Sys. v. Rodriguez</u>,

7  431 U.S. 395, 403-405 (1977).  A district court has discretion in

8  determining whether the moving party has satisfied each Rule 23

9  requirement.  <u>See</u> <u>Califano v. Yamasaki</u>, 442 U.S. 682, 701 (1979);

10 <u>Montgomery v. Rumsfeld</u>, 572 F.2d 250, 255 (9th Cir. 1978).

11 Petitioners have the burden of demonstrating that they satisfy

12 the class certification prerequisites.  <u>See</u> <u>Mantolete v. Bolger</u>,

13 767 F.2d 1416, 1424 (9th Cir. 1985).

14        A.   <u>Rule 23(a)</u>

15        The court must determine if the proposed class

16 satisfies the four prerequisites under Rule 23(a):

17        One or more members of a class may sue or be sued as
       representative parties on behalf of all only if (1) the
18     class is so numerous that joinder of all members is
       impracticable, (2) there are questions of law or fact
19     common to the class, (3) the claims or defenses of the
       representative parties are typical of the claims or
20     defenses of the class, and (4) the representative
       parties will fairly and adequately protect the
21     interests of the class.

22 Fed. R. Civ. P. 23(a).  These requirements are more commonly

23 known as numerosity, commonality, typicality, and adequacy of

24 representation.  <u>See</u> Fed. R. Civ. P. 23(a); <u>Hanlon v. Chrysler</u>

25 <u>Corp.</u>, 150 F.3d 1011, 1019 (9th Cir. 1998).

26        1.   <u>Numerosity</u>

27        Rule 23(a)(1) requires a class "so numerous that

28 joinder of all members is impracticable" before the action is

1  class certified.  East Texas Motor Freight Sys. v. Rodriguez, 431
2  U.S. 395, 405 (1977) ("Careful attention" to the numerosity
3  requirement is "indispensable.").  Courts have established no
4  absolute limitations for a determination of numerosity.  See
5  General Telephone Co. v. Falcon, 446 U.S. 318, 330 (1980).
6  However, a class numbering "several thousand" satisfies the
7  numerosity requirement with ease.  See Morgan v. Laborers Pension
8  Trust Fund for No. Cal., 81 F.R.D. 669, 676 (N.D. Cal. 1979).

9        Plaintiffs have met the numerosity requirement.  In
10  their complaint, plaintiffs allege that the "number of persons in
11  the proposed class is approximately 14,000." (Compl. ¶ 14).
12  Defendants do not object on grounds of numerosity. (Opp'n. at
13  5:4-5).

14            2.  Commonality

15        Rule 23(a)(2) requires "questions of law or fact common
16  to the class."  Fed. R. Civ. P. 23(a)(2).  The Ninth Circuit
17  construes commonality liberally.  See Hanlon, 150 F.3d at 1019.
18  Commonality is satisfied when there are underlying facts or legal
19  theories common throughout the class even if the common facts
20  support different legal theories or common legal theories rest on
21  different facts.  See id.

22        Here, there are common questions of law and fact.
23  Plaintiffs allege that every class member has the identical right
24  not to have a "fair share fee" statute enforced against him or
25  her in violation of the First Amendment and the Equal Protection
26  Clause.  Each member had and will have fees taken from his or her
27  wages pursuant to California Government Code Section 3583.5.  If
28  the statute is unconstitutional on its face, then it is

6

1  unconstitutional for all plaintiffs.  Defendants do not challenge

2  plaintiffs' contention that the proposed class meets the

3  commonality requirements. (Opp'n. at 5:4-5).

4          3.  Typicality

5          Rule 23(a)(3) requires that the "claims or defenses of

6  the representative parties are typical of the claims or defenses

7  of the class."  Fed. R. Civ. P. 23(a)(3).  Typicality requires

8  that named plaintiffs have claims "reasonably coextensive with

9  those of absent class members" without the claims having to be

10  "substantially identical."  Hanlon, 150 F.3d at 1020.

11          Plaintiffs argue that all the proposed class members

12  have suffered an identical injury -- having a "fair share fee"

13  statute enforced against them in violation of the Constitution.

14          CFA argues that named plaintiffs' claims are not

15  typical because: (1) the proposed class is too broad; (2) named

16  plaintiff Erler cannot represent the class regarding the

17  religious discrimination claim; and (3) named plaintiffs Baird

18  and Appell's religious discrimination claims are not typical of

19  the class.

20          a.  Class is too Broad

21          Plaintiffs' proposed class includes all individuals who

22  are or were at any time since October 10, 1999, non-union "higher

23  education employees" in a bargaining unit represented by CFA.

24  Defendants argue that this class is too broad because the statute

25  at issue, California Government Code section 3583.5 did not go

26  into effect until January 1, 2000.  Therefore, the class would

27  include individuals who were employed in the CFA bargaining unit

28  as of October 10, 1999, but were no longer in the bargaining unit

1  as of January 1, 2000, the day the statute took effect.

2  Plaintiffs do not object to modifying the class.  Therefore, the

3  class shall be "all individuals who are or were, at any time

4  since January 1, 2000, non-union 'higher education employees' in

5  a bargaining unit represented by CFA."

6              b.  Erler as a Class Representative

7              Defendants argue that Erler lacks standing to assert a

8  claim of religious discrimination and therefore is prohibited

9  from representing the class regarding this claim.  See Bailey v.

10 Patterson, 369 U.S. 31, 32-33 (1962) (plaintiffs who lack

11 standing to assert a claim cannot represent a class asserting

12 that same claim).

13             The fourth count states:

14         The Defendants have violated the freedom of association
           protected by the First Amendment to the U.S.
15         Constitution by imposing the fee requirements on all
           individuals who are not members of certain approved
16         religions, bodies, or sects, and exempts only members
           of those organizations from the requirement, even
17         though others hold the same conscientious views but are
           not members of the approved organizations.

18

19 (Compl. ¶ 52).  Appell and Baird have each sent a letter to CFA

20 indicating that they hold a conscientious religious objection to

21 the fee, but are not members of a State approved religion or

22 organization.  (Comp. ¶¶ 43-44, Exs. 2-3).  Erler has never

23 indicated that he holds such an objection.  (Whitlow Decl. ¶ 3).

24             Plaintiffs do not object to excluding Erler as a class

25 representative for the fourth count because there is no

26 allegation that Erler desires to assert a conscientious

27 objection.  The court therefore excludes Erler as a class

28 representative for the fourth count and does not address whether

1 he has standing or whether he may seek redress on this claim.

2                 c. <u>Fourth Count</u>

3        Defendants argue that Baird and Appell's religious

4 discrimination claims are typical of a subclass and not typical

5 of the proposed class as a whole.  Only 105 of the potential

6 class members had sought an exemption as of June 15, 2000.

7 (Whitlow Decl. ¶ 3).  Some of these requests were granted,

8 although Baird and Appell's requests were denied.  (Whitlow Decl.

9 ¶ 3).  Defendants argue that only those potential plaintiffs who

10 have asserted a religious objection and have been denied can

11 bring a claim under the First Amendment.

12        Defendants, however, confuse plaintiffs' claim.

13 Plaintiffs are asserting a facial challenge to the statute on the

14 grounds of violation of the First Amendment right to freedom of

15 association, not a religious discrimination claim.[2]  If the

16 statute is facially unconstitutional to one plaintiff, it is

17 unconstitutional to all.  Whether or not an individual plaintiff

18 has applied for an exemption does not affect whether the statute

19 is unconstitutional under the First Amendment's freedom of

20 association clause.[3]

21

22     [2]     With regard to this count, the court only certifies the
23 class to the extent that plaintiffs assert a facial challenge.
In passing, plaintiffs argue that they are asserting an as
24 applied challenge as well. (Reply at 4: n.2).  Plaintiff has
presented no evidence as to the typicality of named plaintiffs
25 with regard to an as applied challenge, and the court therefore
will not certify an as applied challenge under the fourth count.

26     [3]   CFA argues that it is under no obligation to notify
27 employees of their right to assert a religious objection to
payment of the fair share fee.  The court does not address this
28 issue because at the class certification stage it is
inappropriate to address the merits of the underlying dispute.

1          4.   Adequacy of Representation

2               a.   Representatives

3          Rule 23(a)(4) requires representative parties who "will

4    fairly and adequately protect the interests of the class."  Fed.

5    Rule Civ. P. 23(a)(4); see Hanlon, 150 F.3d at 1020.  A class

6    representative "must be part of the class and possess the same

7    interest and suffer the same injury as the class members."  East

8    Texas Motor Freight v. Rodriguez, 431 U.S. 395, 403 (1977)

9    (internal quotations omitted).

10         Defendants argue that named plaintiffs Baird and Appell

11   are not adequate representatives because: (1) Baird and Appell's

12   ideological opposition to CFA renders them unable to represent

13   potential class member who do not share this view; and (2) Appell

14   has repeatedly misled potential class members and therefore is

15   not an adequate class representative.

16                    i.   Baird and Appell's Opposition to CFA

17         Defendants argue that Baird and Appell have expressed

18   ideological conflicts with CFA and therefore cannot adequately

19   represent plaintiffs who do not share the same ideology.

20   Specifically, Baird stated in an e-mail intended to be forwarded

21   to other faculty members that he supports decertification.

22   (Ochoa Decl. Ex. I).  Appell stated in an e-mail to fellow

23   faculty members that "there is no need for a union." (Ochoa Decl.

24   Ex. F).  Other non-union faculty members have expressed different

25   views.  Defendants point to an e-mail from employee Greg Weeks, a

26   non-union member, who "believe[s] very firmly that unions should

27   _____

28   See Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177 (1974).

                              10

1  play an essential role." (Ochoa Decl. Ex. D). Ellen Walker,

2  also a non-union member, states that she "will not work to undo

3  SB 645." (Ochoa Decl. Ex. C).[4]

4              Defendants point out that several circuits have

5  upheld the district court's finding that individuals with

6  ideological opposition to the union are not adequate

7  representatives of fee payers. See, e.g., Gilpin v. AFSCME, AFL-

8  CIO, 875 F.2d 1310, 1313 (7th Cir. 1989) (district court was

9  right not to certify the class when there is a potential conflict

10 between the employee who does not join the union because he is

11 hostile to unions and the employee who is happy to be represented

12 by a union but does not want to pay any more for that

13 representation than he is required to pay.); Kidwell v.

14 Transportation Comm. Int'l Union, 946 F.2d 283, 305-306 (4th Cir.

15 1991) (upholding district court's decision not to certify a class

16 following the reasoning in Gilpin); Weaver v. University of

17 Chicago, 970 F.2d 1523, 1531 (6th Cir. 1992) (also upholding

18 district court's decision not to certify a class following the

19 reasoning in Gilpin). This line of cases is distinguishable from

20 the present case, however, because one of the factors that went

21 into the district court's decision in Gilpin (upon which

22 Weaver and Kidwell rely), was that the plaintiffs asked for

23

24      [4]   Both Weeks and Walker also expressed their lack of
   support for CFA. In the same e-mail, Weeks wrote, "I have seen
25 all too clearly the current union leadership is weak,
   incompetent, and inept, prone always to crumbling under
26 pressure.... I wish I would register my protest by refusing to
   pay the fee." (Ochoa Decl. Ex. D). Walker, in her same e-mail,
27 wrote, "CFA is not a union. Its conduct has been shameful,
   cowardly, self-serving, and elitist. I am appalled at the idea
28 that I will have to support it." (Ochoa Decl. Ex. C).

                                11

1    restitution, a form of punitive damages.  The <u>Gilpin</u> court found

2    that the employee who was happy with the union might not want so

3    punitive a remedy.  <u>See Gilpin</u>, 875 F.2d at 1313.  Here,

4    plaintiffs have not asked for restitution or other punitive

5    damages.

6                         ii.  <u>Appell as an Inadequate Class</u>

7                              <u>Representative</u>

8            Defendants argue that plaintiff Appell is an inadequate

9    class representative because he sent misleading information to

10   the potential class.  <u>See Pilots Against Illegal Dues v. Airline</u>

11   <u>Pilots</u>, 938 F.2d 1123, 1134 (10th Cir. 1991) (court found no

12   abuse of discretion when district court denied class

13   certification on the ground that the representative was

14   inadequate because he had sent a misleading letter to potential

15   class members).  Here, defendants point to several e-mails Appell

16   sent to his fellow faculty members, asserting that 75% of the

17   faculty were not members of the union.  (<u>See</u> November 19, 1999

18   and November 26, 1999 e-mails, Ochoa Decl. Exs. E, F).

19   Defendants claim that in fact, 34% of faculty members are members

20   of CFA (66% non-members) and that Appell, in a later e-mail, even

21   acknowledged this figure, without retracting his previous

22   remarks.  (December 3, 1999 e-mail, Ochoa, Ex. H).  Further,

23   defendants argue that Appell misled the faculty by telling them

24   that those individuals who assert a valid religious objection to

25   the payment of fair share fees will receive a partial refund of

26   the fees.  (November 26, 1999 e-mail, Ochoa, Ex. F).  In fact,

27   the fees of religious objectors are not refunded, but rather are

28   given to charity.  (<u>See</u> Cal. Gov't. Code § 3584(a)).

                                    12

The court finds that Appell's e-mails were not sufficiently misleading to give cause to remove him as a named plaintiff. Although the e-mails dated November 19 and November 26, 1999 may have given incorrect information about the number of faculty members in the union,[5] he later corrected this information. Further, defendants have not made it clear how the percentage of faculty members in the union is important to the constitutional challenge. Second, the e-mail regarding the religious exemption stated that "if you have such a religious objection you may redirect the funds that will be taken mandatorily out of your paychecks starting in January, to yourself and a charity(s) of your choice." (November 26, 1999 e-mail, Ochoa Ex. F). This phrasing may be unclear, but Appell clarified it at a later point in the e-mail where he supplied a sample letter. The sample letter discusses giving the union dues to charity, not returning them to the nonmember. (November 26, 1999 e-mail, Ochoa Ex. F). Further, all nonmembers received the notice from CFA, detailing the religious exemption. Even if Appell's language was confusing, there is no evidence that it actually mislead any potential plaintiffs.

It is not the court's responsibility to seek out the best representatives for the class. Rather, the court determines if the named plaintiffs are adequate representatives. Baird and Appell are adequate representatives.

///

///

---

[5] Defendants have provided no proof that 34% is the correct percentage.

13

1

### b. Attorneys

2    In addition to the adequacy of representative parties,
3 plaintiffs must also show adequate representation by class
4 counsel. See Crawford v. Honig, 37 F.3d 485, 487 (9th Cir. 1994)
5 (adequate representation depends on qualifications of class
6 counsel). Here, plaintiffs are represented by Dylan B. Carp and
7 Milton L. Chappell of the National Right to Work Legal Defense
8 Foundation. Defendants do not question the attorneys'
9 capabilities.

10    B. Rule 23(b)

11    An action that meets all the prerequisites of Rule
12 23(a) may be maintained as a class action if it also meets the
13 requirements of at least one of the three subdivisions of Rule
14 23(b). See Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 163
15 (1974). Plaintiffs seek certification under either Rule
16 23(b)(1)(A) or Rule 23(b)(2). See Fed. R. Civ. P. 23(b)(1)(A),
17 (b)(2).

18    Plaintiffs' proposed class meets the criteria of Rule
19 23(b)(2). Hence, the court does not address whether it meets the
20 criteria of Rule 23(b)(1)(A). Rule 23(b)(2) provides for a class
21 action when "the party opposing the class has acted or refused to
22 act on grounds generally applicable to the class, thereby making
23 appropriate final injunctive relief or corresponding declaratory
24 relief with respect to the class as a whole." Fed. R. Civ. P.
25 23(b)(2).

26    Plaintiffs ask for a declaratory judgment regarding the
27 unconstitutionality of parts of SB 645. (Compl., Prayer for
28 Relief ¶ B). Second, plaintiffs ask for an injunction

14

1 | prohibiting defendants from taking any action to collect fair
2 | share fees from plaintiffs and class members pursuant to SB 645
3 | "until its constitutional deficiencies have been remedied."
4 | (Compl., Prayer for Relief ¶ C).  They further ask for an
5 | injunction enjoining defendants from enforcing the requirement
6 | that petitioners requesting a recession election bear the cost of
7 | conducting such an election.  (Compl., Prayer for Relief ¶ D).
8 | Finally, they ask for a permanent injunction enjoining defendants
9 | from imposing the fee requirement only on individuals who are not
10 | members of certain approved religions, bodies, or sects.
11 | (Compl., Prayer for Relief ¶ E).  Such declaratory and injunctive
12 | relief would apply to the class as a whole.  Defendants do not
13 | object to certifying the class under 23(b)(2).

14 | III.  Conclusion

15 | Plaintiffs have met all of the prerequisites under
16 | 23(a) and have met the criteria of Rule 23(b)(2).  The court will
17 | certify the class with minor modifications.

18 | IT IS THEREFORE ORDERED that plaintiffs' motion for
19 | class certification be, and the same hereby is, GRANTED.  The
20 | court certifies the following class: "all individuals who are or
21 | were, at any time since January 1, 2000, non-union 'higher
22 | education employees' in a bargaining unit represented by CFA."
23 | ///
24 | ///
25 | ///
26 | ///
27 | ///
28 | ///

15

1   The class shall be represented by named plaintiffs Charles Baird

2   and Allen L. Appell for all counts and by plaintiff Edward J.

3   Erler for the first three counts only.  As to the fourth count,

4   the class is certified only to the extent that it asserts a

5   facial, as opposed to an as applied, challenge to the statute.

6   DATED:   July 13, 2000

7

8                          WILLIAM B. SHUBB
                           UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
for the
Eastern District of California
July 17, 2000


* * CERTIFICATE OF SERVICE * *


2:00-cv-00999


Baird

   v.

California Faculty

---

I, the undersigned, hereby certify that I am an employee in the Office of
the Clerk, U.S. District Court, Eastern District of California.

That on  July 17, 2000, I SERVED a true and correct copy(ies) of
the attached, by placing said copy(ies) in a postage paid envelope
addressed to the person(s) hereinafter listed, by depositing said
envelope in the U.S. Mail, by placing said copy(ies) into an inter-office
delivery receptacle located in the Clerk's office, or, pursuant to prior
authorization by counsel, via facsimile.

     Milton L Chappell               SH/WBS
     PRO HAC VICE
     National Right to Work Legal Defense Foundation Inc
     8001 Braddock Road
     Suite 600
     Springfield, VA  22160

     Dylan Bradley Carp
     National Right to Work Legal Defense Foundation Inc
     8001 Braddock Road
     Suite 600
     Springfield, VA  22160

     Robert G., Thompson Jr.
     Public Employment Relations Board
     1031 18th Street
     Suite 208
     Sacramento, CA  95814

Bernard Mc Monigle
Public Employment Relations Board
1031 18th Street
Suite 208
Sacramento, CA  95814

Glenn Rothner
Rothner Segall Bahan and Greenstone
200 East Del Mar Boulevard
Suite 200
Pasadena, CA  91105-2544

Leslie R Lopez
Attorney General's Office of the State of California
PO Box 944255
1300 I Street
Suite 125
Sacramento, CA  94244-2550


                                        Jack L. Wagner, Clerk

                                    BY: _____
                                        Deputy Clerk